[Civ. No. 1196. First Appellate District.—July 27, 1914.]

## OAKLAND BARGE AND LIGHTER COMPANY (a Corporation), Appellant, v. CHARLES T. FOSTER, Respondent.

NEGLIGENCE—LOSS OF LEASED BARGE—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS EXONERATING LESSEE.—In this action by the lessor of a barge against the lessee to recover for its loss, the evidence is sufficient to support the findings that, at the time of the loss, the barge was being operated in a careful and proper manner by the defendant, that everything that human skill and agency could do to prevent the loss was being done by him, that the loss was entirely without his fault, and that it was occasioned by causes beyond human control.

ID.—LEASE OF BARGE—DEGREE OF CARE EXACTED OF LESSEE.—Such case presents a loss of property while in use under a compensated bailment, and therefore the defendant could be held liable for the loss only in the event that he failed to employ ordinary care and prudence in the use of the property.

ID.—LOSS DURING UNUSUAL STORM—BURDEN OF PROOF AS TO NEGLIGENCE.—If the defendant contends that the barge was lost as a result of a sudden, unusual, and extraordinary storm, the burden is upon him to establish such fact; and when he has done this, the burden shifts to the plaintiff to the extent of affirmatively showing that, notwithstanding the storm, the barge would not have been lost but for the defendant's negligence or his want of skill or care in operating it.

ID.—CONFLICTING EVIDENCE—CONCLUSIVENESS OF DECISION OF TRIAL COURT.—If there is a substantial conflict in the evidence on this issue, the decision of the trial court based thereon will not be disturbed on appeal.

25 Cal. App.—13

ID.—LOSS OF BARGE IN STORM—EVIDENCE OF EFFECT OF STORM ON OTHER VESSELS.—On the issue whether the barge was lost through the negligence of the defendant or as the result of a storm, evidence of the effect of the storm upon other vessels similarly situated is relevant and material.

ID.—EXPERT EVIDENCE—HYPOTHETICAL QUESTIONS—NECESSARY BASIS. On such issue an objection that the facts stated in the hypothetical questions put to an expert witness are not sufficient in themselves to enable him to form and express an opinion as to the causes which produced the loss of the barge, goes to the weight of the evidence sought to be elicited by the questions rather than to the admissibility of such evidence, and is properly overruled.

ID.—HYPOTHETICAL QUESTIONS—UPON WHAT MUST BE FOUNDED.— Hypothetical questions must always be founded upon admitted facts or other evidence in the case.

ID.—MOTION TO STRIKE OUT EVIDENCE—ABSENCE OF PREVIOUS OBJECTION.—A motion to strike out evidence, if not preceded by any objection, will be overruled.

ID.—UNRELIABILITY OF TOW-BOATS OPERATED BY GASOLINE—STRIKING OUT OF EXPERT TESTIMONY REGARDING—HARMLESS ERROR.—The striking out in such action of expert testimony as to the general unreliability of tow-boats operated by gasoline engines is harmless error, if no claim is made that the failure of such engines to work, while being used to tow the barge during the storm, contributed to the loss of the barge.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.    E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Milton S. Hamilton, for Appellant.

H. W. Hutton, and A. P. Black, for Respondent.

LENNON, P. J.—Briefly stated, the complaint in this action of claim and delivery alleged that the plaintiff had leased to the defendant a barge of the value of sixteen hundred dollars at a rental of seventy-five dollars per month; that the defendant refused to .pay the second month's rent, and refused and failed upon demand to return the barge to plaintiff. The defendant in his answer admitted that he had failed to return the barge to plaintiff; but pleaded as a defense to the action that he was prevented from doing so because the

barge, while in use upon San Francisco Bay, was driven ashore and wrecked as the result of a sudden, unusual, and extraordinary storm. In this behalf the answer of the defendant further alleged in effect that at the time of the hiring it was understood and agreed that the barge would be used for the purpose of transporting gravel from Napa Creek to the city and county of San Francisco, and would be subject to all of the risks incident to such voyage, and that, at the time of its loss, the barge was loaded with gravel, and being towed by agents of the defendant in a proper and careful manner, and that everything that human skill and agency could do to prevent such loss was done by the defendant.

The trial court, among other things, found the facts surrounding the loss of the barge to be as alleged in the answer of the defendant; and as a conclusion of law therefrom declared that the plaintiff was not entitled to judgment. Judgment was accordingly rendered for the defendant, from which and from an order denying a new trial the plaintiff has appealed.

The principal point presented for a reversal involves the sufficiency of the evidence to support the trial court's finding of fact that, at the time of the loss of the barge, "she was being operated in a careful and proper manner by defendant, and everything that human skill and agency could do to prevent such loss was done by the defendant, and the said loss was entirely without his fault, but was occasioned by causes beyond human control."

This finding, we think, is sufficiently supported by the evidence adduced in support of the defendant's case, which in substance is as follows: The plaintiff knew that the barge was hired and would be used for the purpose of transporting gravel from Napa Creek to the city of San Francisco. The barge was being used solely for that purpose at the time of its loss. The barge left Napa Creek loaded with gravel in tow of the tow-boat "Anacapa." The crew of the "Anacapa" consisted of the master, one man, the engineer, a licensed pilot, and two boys about eighteen or twenty years old. Her engines were in perfect working order, and she was properly and fully equipped and found for the work in which she was engaged. At the start the weather was good, and the "Anacapa" with the barge in tow proceeded as far as Point Pinole, where the anchor was dropped. When the tide turned,

the weather still being fair, the journey to San Francisco was resumed. Approaching The Brothers, it began to breeze up; and it was agreed between the master and pilot of the tow-boat that it would be best to go into Pirate Cove off Angel Island in San Francisco Bay. This was done, and there the barge was anchored with two anchors attached to a 4½ inch Manila rope. Shortly thereafter the anchor line parted. The wind was northwest, an extraordinary and unusual wind for that time of the year. After the breaking of the anchor the crew endeavored to tow the barge with a 4½ inch Manila rope in good condition, but the line broke twice, and after that it became impossible without great danger to put a man aboard the barge to make fast another tow-line. The tow-boat whistled for assistance and kept with the barge. Another tow-boat responded, but its crew failed in an effort to get a line aboard the barge. The barge, with the "Anacapa" hovering near, drifted out to the Heads. When the tide turned she drifted in and went ashore at Baker's Beach. The wind on the bay at or about the time the barge broke her anchor and tow-lines was blowing about twenty-five miles an hour, and the sea was very rough. The wind was not blowing a steady blow; it was blowing squally. The 4½ inch Manila rope and two lines in use upon the "Anacapa" were considered very strong lines, and ordinarily would have been sufficiently strong to hold and tow the barge in question. The combined force of wind and tide caused the anchor and tow-lines to break. The "Anacapa" had sufficient power to tow and handle a barge loaded with one hundred and twenty-five tons of gravel. The barge in question was loaded with but ninety-three tons of gravel.

It is conceded that the case as a whole shows the loss of property while in use under a compensated bailment, and that therefore the defendant could be held liable for the loss only in the event that he had failed to employ ordinary care and prudence in the use of the property. It is also conceded that the burden of proof was upon the defendant to show that the barge in question was lost as a result of a sudden, unusual, and extraordinary storm; and that when this was done the burden of proof shifted to the plaintiff to the extent of affirmatively showing that, notwithstanding the storm the barge would not have been lost but for the defendant's negligence or his want of skill or care in operating the barge. It is insisted, however,

upon behalf of the plaintiff that the evidence shows that the loss of the barge was not caused, either proximately or remotely, by a storm of sufficient severity to have probably caused the loss without fault on the part of the defendant, but that such loss was directly due to defendant's negligence and carelessness in operating the barge with an inefficient towboat and defective equipment.    The evidence upon this phase of the case is discussed in detail by counsel for the plaintiff in a very earnest endeavor to show that it is in favor of the plaintiff, and therefore should have compelled a finding against the defendant.    But upon a careful review of the record we are satisfied that the effort of counsel is but an argument directed merely to the weight of conflicting evidence.    The evidence relating to the sufficiency of the towboat to ordinarily perform the work for which it was engaged, and the sufficiency of the equipment, is, we think, in substantial conflict.    The weight of the evidence was a question to be determined exclusively by the trial court; and its decision of a question of fact based upon conflicting evidence will not be disturbed here.

A witness for the defendant testified that he was the captain of the tow-boat ''Millie,'' and that on the day and about the time the barge in question broke her anchor and tow-lines, the ''Millie,'' with the witness in command, was towing a steamer on San Francisco Bay; and that when abreast of Angel Island the tow-line carried away three times as the result of a strong wind and heavy tide.    The objection to this testimony was properly overruled.    The purpose of the testimony was undoubtedly to show the prevalence and severity of the storm in that portion of the bay in which the barge in question broke her anchor and tow-lines.    For such purpose the effect of the storm upon other vessels similarly situated was relevant and material.    (Jones on Evidence, sec. 141.)

Several hypothetical questions, purporting to be based upon the facts and circumstances preceding and attending the loss of the barge, were put to a witness for the defendant.    In each instance the question was objected to upon the ground that it assumed facts not in evidence.    The objection was well taken, and should have been sustained.    When the questions were put to the witness the supposed facts which formed their basis had not been established in evidence.    Hypo-

thetical questions must always be founded upon admitted facts or other evidence in the case; and if the questions complained of had not been followed by evidence of facts upon which they were based the overruling of the plaintiff's objections would have been prejudicial error. While the procedure adopted by the trial court in the reception of the evidence complained of was careless and confusing, nevertheless, upon the whole we are satisfied that it did not result in substantial injury to the plaintiff.

The objection that the facts stated in the hypothetical questions were not sufficient in themselves to enable the witness to form and express an expert opinion as to the causes which produced the loss of the barge, went to the weight of the evidence sought to be elicited by the questions, rather than to the admissibility of such evidence.

Complaint is made of the ruling of the trial court striking out that portion of the testimony of the witness Leffingwell which was to the effect that, in his opinion, tow-boats operated by gasoline launches were not generally reliable. The motion to strike out was made upon the ground that the proper foundation for the question which called for the opinion of the witness had not been laid, in that it had not been shown that the witness was familiar with tow-boats operated by gasoline engines. Upon the ground stated the motion to strike out should have been denied. In the first place the motion was not preceded by a proper or any objection; and in the second place, the examination of the witness developed the fact that he, as a marine engineer and pilot, had made sufficient observation of tow-boats operated by gasoline engines to enable him to express an opinion as to the reliability of such engines. The ruling, however, was harmless. While the tow-boat in question was operated by a gasoline engine, yet it was not claimed that the failure of the engine to work during the storm contributed to the loss of the barge. No such issue was presented by the evidence; and therefore testimony as to the general unreliability of tow-boats operated by gasoline engines was wholly immaterial. This being so, the presence of the testimony stricken out would not have tended in the slightest degree to warrant and support a finding in favor of the plaintiff.

We have examined the remaining assignments of error in the rulings of the trial court, and we are satisfied that they are

without merit and not of sufficient importance to require discussion.

The judgment and order appealed from are affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1914.